IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RICHARD HAUSER, | ) |
| Plaintiff, | ) |
| v. | ) No. 11 C 8838 |
| GREAT AMERICAN ASSURANCE COMPANY, | ) Judge Virginia M. Kendall |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Richard Hauser insured a horse, Viva's Romina, with Defendant Great American Assurance Company. Following the horse's death, Hauser sought to collect on an equine mortality insurance policy issued by Great American. Great American denied liability under the policy due to alleged misrepresentations Hauser made in his insurance application and for Hauser's alleged violations of conditions precedent. Hauser subsequently filed this action against Great American in the Circuit Court of Cook County, Illinois on November 16, 2011. (Dkt. No. 1.) Hauser alleges breach of contract and vexatious and unreasonable action and delay by Great American. (*Id.*) Great American removed this action from state court based on diversity of citizenship. (*Id.*) Great American now seeks summary judgment based on alleged misrepresentations and omissions in Hauser's insurance application and Hauser's failure to satisfy two conditions precedent. This Court grants Great American's motion because Hauser failed to satisfy a condition precedent that required him to provide immediate notice to Great American of any injury or lameness to Viva's Romina. Accordingly, this Court enters summary judgment for Great American.

1

# FACTS

The following facts are undisputed unless otherwise noted. Hauser is a citizen of the State of Indiana and resides in Carmel, Indiana. (Def. 56.1 St. ¶ 1.) Great American is an Ohio corporation with its principal place of business in Cincinnati, Ohio. (*Id.* ¶ 2.) In December 2007, Hauser purchased a horse named "Viva's Romina" for $45,000. (*Id.* ¶ 11.) Soon after purchasing Viva's Romina, Hauser applied for equine insurance through his insurance agency. (*Id.* ¶ 13.) Approximately one year later Hauser renewed his policy for the 2008-2009 policy term. (*Id.* ¶ 14.) Hauser declined to renew his policy the following year for economic reasons. (*Id.* ¶ 15.)

In April 2011, Hauser leased Viva's Romina to Diane Carney. (*Id.* ¶ 16.) The lease provided Ms. Carney, a horse trainer, with an option to buy Viva's Romina for $80,000. (*Id*. ¶¶ 16, 19.) According to the lease, Ms. Carney was to stable the horse in Illinois. (*Id.* ¶ 40.) Ms. Carney was predominantly responsible for Viva's Romina's care and attention during the lease term. (*Id.* ¶ 42.)

After entering into the lease with Ms. Carney, Hauser applied for equine insurance covering Viva's Romina. (*Id.* ¶ 17.) Hauser completed his insurance application and a Health Statement for Viva's Romina on April 26, 2011. (*Id.* ¶ 18.) Hauser sought to insure Viva's Romina for $80,000. (*Id.* ¶ 19.) In his application, Hauser indicated that Viva's Romina was healthy and capable of performing its intended use. (*Id.* ¶ 20.) One intended use for Viva's Romina was to participate in competitions that would require the horse to jump fences that were one and one-half meters high. (*See* Pl. 56.1 St. ¶ 13.) Hauser also indicated that Viva's Romina had not been treated for accident, illness, colic or lameness in the past two years but had received normal veterinarian checkups. (Def. 56.1 St. ¶ 21.) The Health Statement signed by Hauser states:

> This form can only be used when an animal has not had any illness, injury, lameness or disease in the past year. Any animal with current or previous conditions is subject to company approval. A veterinarian exam may be required before coverage can be bound. Please call our office with any questions regarding the medical history.
>
> I declare, to the best of my knowledge, that the animals named above have been free from illness, injury, lameness or disease. These animals have not had any type of colic or gastrointestinal disorders, nerving, degenerative joint disease, founder, laminitis or surgery of any kind in the past year. If any of these medical conditions have occurred in previous years please contact our office. For renewals, this declaration relates to the prior term only, as all medical information older than 12 months would have been previously reported to the company.
>
> I understand that any coverage applied for may become null and void if any material fact has been concealed, misrepresented or is missing from this form.

(*Id.* ¶ 22.)

Hauser and Great American dispute whether Viva's Romina suffered from illness, injury, lameness or disease prior to April 26, 2011. Great American contends that Viva's Romina exhibited signs of and received treatments for lameness between August 7, 2010, and April 13, 2011. (*Id.* ¶ 23.) Hauser contends that Viva's Romina was not lame prior to April 26, 2011, and that the treatments Viva's Romina received between August 7, 2010, and April 13, 2011, were routine veterinary maintenance. (Pl. 56.1 Resp. ¶ 23.)

Great American also contends that it was not aware of the treatments Viva's Romina received between August 7, 2010, and April 13, 2011, prior to issuing the insurance policy. (Def. 56.1 St. ¶ 24.) Although Hauser takes issue with the affidavit Great American cites to support this fact and disputes whether any of the treatments were for lameness, Hauser does not dispute

that Great American did not know about the treatments prior to issuing the insurance policy. (Pl. 56.1 Resp. ¶ 24.)

Great American issued an Equine Mortality Broad Form Policy on Viva's Romina with a policy period from April 28, 2011, to April 28, 2012. (Def. 56.1 St. ¶ 28.) Section VI. of the insurance policy states:

> VI. CONDITIONS PRECEDENT
>
> EACH OF THE FOLLOWING IS A CONDITION PRECEDENT TO ANY LIABILITY BY US UNDER THIS POLICY. ANY FAILURE TO SATISFY ANY ONE OR MORE OF THESE CONDITIONS PRECEDENT, OR OF ANY CONDITION PRECEDENT IN ANY ENDORSEMENT TO THIS POLICY, IN RESPECT OF ANY "HORSE," LOSS, OR CLAIM, WILL INVALIDATE COVERAGE IN RESPECT OF THAT "HORSE," LOSS, OR CLAIM AND WILL RELEASE US FROM ALL LIABILITY IN RESPECT OF THAT "HORSE," LOSS, OR CLAIM.

(*Id.* ¶ 31.) One condition precedent in the insurance policy concerns the health of the covered horse and states:

> A. Health of Covered "Horses"
>
> It is a condition precedent to our liability under this policy that at the beginning of the "policy period," each "horse" specified in the Declarations is in sound health and free from any illness, disease, injury, lameness condition or lameness injury or physical disability of any kind.
>
> \* \* \*
>
> Our acceptance of an application, veterinary certificate, health statement and/or declaration of health submitted to us for insurance on any "horse" under this policy or for any increase, extension of or addition to coverage on a "horse" will not remove, satisfy or waive the requirement of full compliance with this condition precedent.

4

(*Id.* ¶ 33.) A second condition precedent in the insurance policy concerns Hauser's responsibilities in the event of an accident, injury, illness, lameness condition or lameness injury, disease, or physical disability of any kind and states:

> F. Your Duties In The Event Of Accident, Injury, Illness, Lameness Condition Or Lameness Injury, Disease, Or Physical Disability
>
> It is a condition precedent of any liability by us under this policy that, in the event of any accident, injury, illness, lameness condition or lameness injury, disease, or physical disability of any kind of or to a "horse," you do each and every one of the following or have it done by another:
>
> 1. Immediately, and at no expense to the Company, employ a "qualified veterinarian" to provide medical care to the "horse".
>
> 2. Give immediate notice to us of the incident, injury, illness, lameness condition or lameness injury, disease or physical disability of any kind. Such notice should be given by telephone to us at our 24 HOUR EQUINE OPERATIONS CALL NUMBER: 1-800-331-0211, and must include (a) a description of the accident, injury, illness, lameness condition or lameness injury, disease, or physical disability and (b) the name and contact information of the "qualified veterinarian" caring for the "horse;"
>
> 3. Use all reasonable means possible to save the life of the "horse;" and
>
> 4. Allow us to examine, and if we so require, to assume control over the treatment of the "horse" by a "qualified veterinarian" of our choice, at our expense, and allow the "horse" to be removed for such treatment.

(*Id.* ¶ 36.) Section VI. of the insurance policy concludes with the following:

> H. Notice
>
> Any breach in any respect of any of the Conditions Precedent set forth in VI.A. through G. above, and/or of any one or more of the additional conditions precedent set forth in any endorsement to this policy, whether you have personal knowledge of such circumstances or events or such knowledge is confined to your

5

family members, representatives, agents, veterinarians, employees, bailees, co-owners or other persons who have care, custody or control of a "horse" at any point in time, will render your claim null and void and release us from liability.

(*Id.* ¶ 31.)

Section VII. of the insurance policy states:

VII. OTHER CONDITIONS

* * *

E. Concealment, Misrepresentation, or Fraud

The insurance under this policy is null and void from inception and we are released from all liability under this policy if you or anyone acting on your behalf has committed any fraud or concealed, misrepresented, omitted or failed to disclose any material fact or circumstance, relating to this policy, any "horse" insured under this policy, your "ownership interest" in any "horse" insured under this policy, or any loss or claim under this policy.

F. Suit Against the Company

No suit, action or proceeding against us for the recovery of any sum under this policy shall be sustainable in any court of law or equity unless the same be commenced within twelve (12) months after your discovery of the occurrence which gives rise to the claim. If, however, the laws of the State within which the policy is issued render such limitation invalid, then any such suit, action, or proceeding shall be void unless commenced within the shortest limit of time permitted by the laws of such State to be fixed herein.

Moreover, no suit, action or proceeding for the recovery of any sum under this policy may be brought against us unless you have fully complied with all terms, conditions and provisions of this policy.

(*Id.* ¶ 32.) In addition to the insurance policy, Hauser received cards that included the telephone number to use to notify Great American should Viva's Romina experience a medical issue. (*Id.* ¶¶ 38-39.)

6

On June 27, 2011, Ms. Carney found Viva's Romina to be severely lame. (*Id.* ¶ 46.) Ms. Carney testified that Viva's Romina "couldn't walk out of its stall. I mean it did walk, but it was very lame walking, which of course, it hadn't been. I mean that – it was – it was alarming to me." (*Id.*) This concerned Ms. Carney, who called Tammy Provost that same day to report Viva's Romina's lameness. (*Id.* ¶ 48.) Ms. Provost is Hauser's horse trainer. (*Id.*) Ms. Carney also called her veterinarian, who examined the horse. (*Id.* ¶ 49.) Ms. Carney asked her veterinarian whether Viva's Romina was well enough to ship to Indiana. (*Id.* ¶ 50.) Ms. Carney did not notify Great American of Viva's Romina's lameness. (*Id.* ¶ 52.)

Between June 27, 2011, and July 6, 2011, Ms. Carney treated Viva's Romina's front, right leg with ice. (*Id.* ¶ 51) On July 6, 2011, Ms. Carney shipped Viva's Romina to Indiana. (*Id.* ¶ 51.) On July 11, 2011, Hauser's veterinarian, Dr. Haynes Stevens, examined Viva's Romina. (Pl. 56.1 St. ¶ 1.) Great American first received notice of Viva's Romina's lameness on July 12, 2011. (*Id.* ¶ 53; Pl. 56.1 St. ¶ 2.) On September 27, 2011, Hauser arranged to have Viva's Romina destroyed. (Def. 56.1 St. ¶ 55.) On October 14, 2011, Great American told Hauser that it denied coverage under the insurance policy. (*Id.* ¶ 56.)

## STANDARD OF REVIEW

"Summary judgment is proper when, viewing all facts and inferences in favor of the nonmoving party, no genuine dispute as to material fact exists, and the moving party is entitled to judgment as a matter of law." *Carroll v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012). Whether a fact is material depends on the underlying substantive law that governs the dispute. *Id.* And a genuine dispute is one where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* (citation omitted). Summary judgment is appropriate where the moving party shows that the nonmoving party cannot prove an element essential to its case.

*Parent v. Home Depot U.S.A., Inc.*, 694 F.3d 919, 922 (7th Cir. 2012). Where the moving party has properly supported its motion, the nonmoving party must come forward with facts that show there is a genuine issue for trial. *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 951 (7th Cir. 2013).

## **DISCUSSION**

As a preliminary matter, neither party raised a conflict of law issue in this diversity case. Accordingly, this Court applied the law of the state in which this Court sits. *See Wood v. Mid-Valley Inc.*, 942 F.2d 425, 426 (7th Cir. 1991). Based on the parties' repeated references to Illinois law in their briefs, this Court's application of Illinois law is not at issue.

**I.     There Are Genuine Issues of Material Fact Concerning Viva's Romina's Health**

Great American argues that Hauser's alleged misrepresentations and omissions in his insurance application and Health Statement void coverage under the insurance policy. Great American also argues that Hauser violated a condition precedent of the policy, Section VI.A., which required Viva's Romina to be in sound health and free from any illness, disease, injury, lameness condition or lameness injury or physical disability of any kind at the beginning of the policy period. Both of these arguments depend on Viva's Romina's health prior to April 2011.

But the parties dispute Viva's Romina's health prior to April 2011. Great American relies on veterinary records related to Viva's Romina's care as evidence that Viva's Romina exhibited signs of and received treatments for lameness prior to April 2011. Hauser meets Great American's evidence with an affidavit from Dr. Haynes Stevens, who administered several of the treatments to Viva's Romina that Great American relies on. Dr. Stevens states in his affidavit that Viva's Romina was a sound horse between August 25, 2010, and April 13, 2011, which is

when Great American contends that Viva's Romina exhibited signs of and received treatments for lameness. This creates a genuine dispute of material fact that precludes summary judgment.

## II. There Are No Genuine Issues of Material Fact Concerning Hauser's Non-Compliance with the Notice Provision

Great American further argues that Hauser's failure to notify Great American immediately once Ms. Carney discovered Viva's Romina to be lame violates a condition precedent of the insurance policy that precludes coverage. There is no dispute as to the facts material to this argument. Ms. Carney, who was responsible for the horse's care and attention at the time, found Viva's Romina to be severely lame on June 27, 2011. Ms. Carney notified Ms. Provost of Viva's Romina's lameness that same day. Ms. Provost is Hauser's horse trainer. Ms. Carney shipped Viva's Romina to Ms. Provost on July 6, 2011. On July 11, 2011, Hauser's veterinarian, Dr. Stevens, examined Viva's Romina. Great American learned of Viva's Romina's lameness the next day. Based on these undisputed facts, the issue before this Court is whether the fifteen days that elapsed between Ms. Carney's discovery and Great American's first notification that Viva's Romina was lame violated the insurance policy's immediate notice provision. It did.

Under Illinois law, an insurance policy is a contract and courts should interpret them as such. *Wehrle v. Cincinnati Ins. Co.*, 719 F.3d 840, 842 (7th Cir. 2013). As a contract, an insurance policy will define and control the duties of the parties to the insurance policy. *See Amer. Country Ins. Co. v. Bruhn*, 682 N.E.2d 366, 370 (Ill. App. Ct. 1997). For example, the insurance policy may include a notice provision that requires the insured to notify the insurer upon the occurrence of a specified event. *Id.* Such a provision may result in the denial of coverage for non-compliance. *Id.*

Illinois law strictly interprets notice provisions in equine insurance policies. *See Hough v. Kaskaskia Live Stock Ins. Co.*, 230 Ill. App. 341, 348 (Ill. App. Ct. 1923); *see also Rand v. Underwriters at Lloyd's, London Subscribing Lloyd's Policy No. DB6/234*, 295 F.2d 342 (2d Cir. 1961) (citing *Hough* to support proposition that Illinois is a jurisdiction that strictly interprets notice provisions in livestock policies). As other courts have explained, strict enforcement of immediate notice provisions in equine insurance policies is necessary in view of the peculiar risks involved in such policies. *Jahn v. Great Amer. Assurance Co.*, No. 03 C 6203, 2004 WL 765240, at *9 (N.D. Ill. Apr. 7, 2004); *Hiscox Dedicated Corp. Member Ltd. v. Wilson*, 246 F. Supp. 2d 684, 693 (E.D. Ky. 2003); *Arigato Stables v. Am. Love Stock Ins. Co.*, 493 A.2d 584, 586 (N.J. Super. Ct. App. Div. 1985); *Circle 4 Stables, Inc. v. Nat'l Sur. Corp.*, 451 S.W.2d 564, 567-68 (Tex. Civ. App. 1970). Moreover, an insurer does not have to show prejudice where a notice provision requires immediate notice. *See Highlands Ins. Co. v. Lewis Rail Serv. Co.*, 10 F.3d 1247, 1250 (7th Cir. 1993) ("Illinois law does not require prejudice to the insurer where the notice provision is one of *prompt* notice, or where there is no good reason for the late notice or where the delay was relatively brief."); *see also Fletcher v. Palos Comm. Consol. Sch. Dist. No. 118 of Cook County.*, 164 Ill. App. 3d 921, 928 (Ill. App. Ct. 1987) ("The lack of prejudice to the insurer is a factor to be considered *only* where the insured had a good excuse for the late notice or where the delay was relatively brief.") (emphasis added).

Here, the parties agreed that Hauser would provide immediate notice to Great American of any incident, injury, illness, lameness condition or lameness injury, disease, or physical disability of any kind. Because the insurance policy does not define the word "immediate," and because the word "immediate" is unambiguous, it takes its plain and ordinary meaning. *See First Ins. Funding Corp. v. Fed. Ins. Co.*, 284 F.3d 799, 804 (7th Cir. 2002). The plain and ordinary

meaning of "immediate" in the context of an equine insurance policy is at once. In view of Illinois's strict interpretation of notice provisions in equine insurance policies and the reasoning underlying the strict enforcement of equine insurance policies expressed by other courts, notice of Viva's Romina's lameness fifteen days after the fact does not constitute immediate notice. *See Hough*, 230 Ill. App. at 347 (insurer not liable where horse owner waited ten days to notify insurer of horse's sickness); *see also Jahn*, 2004 WL 765240, at \*9 (horse owner failed to provide immediate notice when it waited six days to notify insurer of horse's illness).

The "24 Hour Equine Operations Call Number" included in the insurance policy and on the cards Great American gave to Hauser confirms that Hauser should have contacted Great American at once. Moreover, every use of the word "immediate" or "immediately" in the insurance policy is consistent with its plain and ordinary meaning. For example, Section II.B.1. of the insurance policy states "during the twelve (12) months immediately before the beginning of the 'policy period.'" This suggests that "immediate" means without the loss of time. Further, Section II.B.2. of the insurance policy requires that Hauser "immediately report any disappearance of a 'horse' to [GREAT AMERICAN] and to law enforcement." This suggests that "immediate" means without delay. These examples provide further confirmation that the word "immediate" takes its plain and ordinary meaning in this insurance policy.

In addition, Hauser's arguments belie any suggestion that the word "immediate" encompasses Hauser's fifteen-day delay. According to Hauser, his daughter, Jenn Hauser, and Ms. Provost "immediately" contacted Dr. Stevens when they received Viva's Romina from Ms. Carney on July 6, 2011. (Dkt. No. 27 at 4.) Hauser explains that Dr. Stevens "immediately" arranged to travel to Indiana to examine the horse. (*Id.*) Hauser further explains that he provided notice to Great American on July 12, 2011, or "immediately" after Dr. Stevens completed his

11

July 11, 2011, examination of Viva's Romina. (*Id.* at 5-6.) It took six days for these three "immediate" actions to occur. By this standard, fifteen days is not immediate.

Case law also undermines any suggestion that waiting fifteen days to provide notice to an insurer qualifies as immediate notice. Hauser cites *Hiscox* as an example of a case that accepted a thirteen-day delay as satisfactory under a similar notice provision in an equine insurance policy. Hauser's reliance on *Hiscox*, however, is misplaced. In *Hiscox*, the court found that the insured did not comply with a notice provision when he failed to report an infection a horse experienced following a previously reported surgery. *Hiscox*, 246 F. Supp. 2d at 690. The court contrasted the situation it faced to the insured's earlier experience with a horse named Remember Ike. *Id.* at 691. The insured reported Remember Ike's injury, which required surgery, to his insurer on May 6, 1999. *Id.* Thirteen days later the insured again notified his insurer about an infection that Remember Ike developed after the horse's surgery. *Id.* This confirmed the court's view that the insured should have provided notice twice: once for the surgery, provided May 6, 1999, and again for the infection, provided May 19, 1999. *Id.* Although *Hiscox* notes that Remember Ike's surgery took place on May 7, 1999, it does not specify when the insured learned of Remember Ike's infection. *Id.* Consequently, *Hiscox* is inconclusive at best as to whether there was a delay between the insured learning of the infection and providing notice to the insurer. Consequently, *Hiscox* does not support Hauser's argument. The likelihood that it probably took some time for the infection to develop and for Remember Ike to become symptomatic after its May 7, 1999, surgery further undermines Hauser's argument in this regard.

Hauser also contends that he did not violate the insurance policy's notice provision because he did not have personal knowledge of Viva's Romina's lameness and because neither Ms. Provost nor the veterinarians who examined Viva's Romina are his employees. This

argument is without merit. *See*, *e.g.*, *Hiscox Dedicated Corp. Member Ltd. v. Wilson*, 246 F. Supp. 2d 684, 690 (E.D. Ky. 2008) (owner's lack of knowledge does not excuse failure of condition precedent where person with care, custody, or control of horse knew of post-surgery infection). The insurance policy renders Hauser's personal knowledge irrelevant because it extends the notice provision to others. The insurance policy states that "[a]ny breach in any respect of any of the Conditions Precedent . . . whether you have personal knowledge of such circumstances or events or such knowledge is confined to your family members, representatives, agents, veterinarians, employees, bailees, co-owners or other persons who have care, custody or control of [Viva's Romina] at any point in time, will render your claim null and void and release us from liability." Ms. Carney had custody of Viva's Romina on June 27, 2011. Ms. Carney also was responsible for Viva's Romina's care and attention on June 27, 2011. This remained the case until Ms. Carney transferred custody and care of Viva's Romina to Ms. Provost on July 6, 2011. Consequently, Ms. Carney's knowledge of Viva's Romina's lameness on June 27, 2011, triggered the insurance policy's notice provision.

Hauser further argues that delay was necessary to determine the cause of Viva's Romina's lameness. (*Id.* at 4.) But this argument fails as a matter of law. As explained in *Hough*, it is not for the insured to determine the seriousness of an injured horse's injury. *Hough*, 230 Ill. App. at 348. Rather, the insured must notify the insurer of the horse's injury or risk absolving the insurer of liability. *Id.* This allows the insurer to intervene in the injured horse's treatment if the insurer chooses to do so. *See Jahn*, 2004 WL 765240, at *9.

Hauser points out that Great American had an opportunity to examine Viva's Romina and to participate in the horse's treatment. But Hauser overlooks the fact that Great American's opportunity only came after fifteen days of delay. The only treatment Viva's Romina received

for its injured leg during the first nine days of this fifteen-day period was ice. This Court does not need to speculate as to whether the treatment Viva's Romina may have received from Great American's veterinarians would have been any different or whether the horse's condition improved or worsened during this period. All that matters is that Hauser's delay denied Great American the opportunity to "assume control over the treatment" of Viva's Romina as permitted by Section VI.F.3. of the insurance policy. For this reason, Hauser's delay not only violated a condition precedent but also prejudiced Great American.

Because Hauser failed to provide Great American with immediate notice of Viva's Romina's lameness, this Court grants summary judgment to Great American with respect to Hauser's breach of contract claim. This Court also grants summary judgment to Great American with respect to Hauser's vexatious and unreasonable action and delay claim. Previously, in granting Great American's motion to bifurcate Hauser's claims, this Court determined that Hauser's vexatious and unreasonable action and delay claim requires Hauser to first show that Great American breached the insurance policy. (Dkt. No. 18.) Hauser's violation of a condition precedent released Great American from all liability under the insurance policy, and thereby precludes any breach by Great American. This, in turn, precludes Hauser's vexatious and unreasonable action and delay claim.

## CONCLUSION

For the reasons stated above, this Court grants Great American's motion for summary judgment and enters summary judgment in favor of Great American on both of Hauser's claims.

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: September 30, 2013